# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK MATERO,<br><br>　　　　　*Plaintiff,*<br><br>　v.<br><br>CHIPOTLE MEXICAN GRILL, INC.<br><br>and<br><br>CHIPOTLE SERVICES, LLC,<br><br>　　　　　*Defendants.* | CIVIL ACTION<br>No. 17-5529 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　September 20, 2018

## **MEMORANDUM**

In September of 2015, Mark Matero began working for Chipotle Services, LLC as an area manager, overseeing the operations of multiple Chipotle restaurants in the Philadelphia suburbs. He took leave from his position to have back surgery and to recover from the procedure. He was fired the day he returned to work. He sued Chipotle Mexican Grill, Inc. and Chipotle Services (collectively "Chipotle") alleging discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act (Count I) as well as retaliation and interference claims under the Family and Medical Leave Act (Count II). In Counts III and IV, he asserts parallel claims, respectively, under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.[1]

---

[1] This Court has interpreted the ADA, PHRA and PFPO to apply to employment discrimination claims in a similar fashion. *See Ahern v. Eresearch Tech., Inc.*, 183 F.Supp.3d 663, 668 (E.D. Pa.

1

Chipotle moves for summary judgment on all claims. After thoroughly reviewing the record and holding oral argument (ECF No. 33), the Court denies the motion in all respects.

I

As an area manager, Matero was responsible for "five or six" Chipotle restaurants. (Pl.'s Br. Opp. Summ. J. Ex. A ("Matero Dep."), at 106:5, ECF No. 24-2.) Among other duties, area managers ensure that each restaurant's general manager understands and implements Chipotle's policies and procedures. (Defs.' Mem. Supp. Summ. J. Ex. G, ECF No. 20-2 at 125.) Matero received four to five months of training, including training for every restaurant position from prep cook to general manager. (Defs.' Mem. Supp. Summ. J. Ex. A, ("Matero Dep."), at 131:18–24, 132:1–14, ECF No. 20-2; *Id.* at Ex. C ("Nyakundi Dep."), at 64:18–21, ECF No. 20-2.) On February 1, 2016, at the conclusion of his training, Matero received his only performance review. (Pl.'s Br. Opp. Summ. J. Ex. H, ECF No. 24-4 at 9.) His supervisor, Robert Anderson, gave him a score of 3 on a 1–4 scale, which classified him as a "reliable contributor . . . [who e]ffectively applies [himself] to the tasks of the position and typically delivers effective results in many aspects of [his] position." (*Id.* at 16.) On February 22, 2016, Matero received a merit raise. (Pl.'s Br. Opp. Summ. J. Ex. E–G, ECF No. 24-4 at 2, 8.) While the difference between his salary increase and those of his peers was fairly minimal, Matero received the highest percentage raise of all the area managers in his field

---

2016) (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Joseph v. Cont'l Airlines, Inc.*, 126 F.Supp.2d 373, 376 n.3 (E.D. Pa. 2000)). The parties agree that Matero's ADA, PHRA and PFPO claims are subject to the same fate. (Defs.' Mem. Supp. Summ. J., ECF No. 20 at 29–30; Pl.'s Br. Opp. Summ. J., ECF No. 24 at 9 n.1.)

group. (*Id.*) Matero also received a bonus on March 6, 2016. (*Id.* at Ex. E, ECF No. 24-4 at 2.)

Sometime before October 26, 2016, Matero told Anderson that he needed time off for back surgery. (Pl.'s Br. Opp. Summ. J. Ex. C ("Anderson Dep."), at 120:11–22, ECF No. 24-2.) Matero used his personal and/or vacation days for surgery and recovery. (Matero Dep. 277:4–11.) On November 11, Matero texted Anderson that he would have medical restrictions when he returned to work: no lifting, bending, or twisting, and breaks after thirty minutes of riding in a car. (*Id.* at 309:6–16, 312:19–22.)

At some point while Matero was on leave, Chipotle demoted Anderson and Dismas Nyakundi became Matero's supervisor. (Pl.'s Br. Opp. Summ. J. Ex. D ("Nyakundi Dep."), at 63:1–6, ECF No. 24-3.) While Matero remained out, Nyakundi, among other things, visited the restaurants for which Matero was responsible. (*Id.* at 124:22–24, 125:1–5.) He then convened a meeting with Matero and Anderson on November 14, the day Matero returned to work. (Matero Dep. 309:2–5, 310:22–24, 311:1–6.) During the meeting, Matero restated his medical restrictions and said that he would soon need to begin physical therapy. (*Id.* at 312:7–11, 16–22.) At the end of the meeting, Nyakundi fired Matero. (*Id.* at 313:2–11.) Matero filed a charge of disability discrimination with the Equal Employment Opportunity Commission on December 7, 2016. (Am. Compl. Ex. A, ECF No. 2 at 12.)

In its position statement to the EEOC, Chipotle specifically cited as its reasons for Matero's termination, among other things, his failure to complete mandatory cash audits, train teams and general managers and report health code violations. (Pl.'s Br. Opp. Summ. J. Ex. L, ECF No. 24-5 at 12.) Chipotle also stated that on October 26,

3

2016, the day before Matero left for surgery, he required the general manager of Chipotle's Exton restaurant, Danasia Dunston, to return to work two days after vomiting on the job in violation of Chipotle's three-day mandatory absence policy for ill employees. (*Id.* at 18.) According to the EEOC statement, "the Dunston incident" "[i]n particular . . . ultimately lead [sic] to the final decision to terminate [Matero's] employment." (*Id.*)

In a November 14, 2014 email to Executive Regional Director Pedro Huichapa, Executive Team Director Andrew Kellogg and Restaurant Support Officer Michael Duffy, Nyakundi cited the Dunston incident and Matero's failure to report health code violations as reasons for his termination. (Defs.' Mem. Supp. Summ. J. Ex. T, ECF No. 20-3 at 55.) When deposed, Nyakundi testified that Matero was "running some of the worst stores in Philadelphia . . . [which put] us in a position where we were endangering the public from a food safety standpoint." (Nyakundi Dep. 126:1–7.) For his part, Anderson testified that the Dunston incident was "the final . . . straw" in the decision to terminate Matero. (Anderson Dep. 158:15–17.) The record also reflects that Matero's restaurants failed several food safety and cash handling audits in September and October 2016. (Defs.' Mem. Supp. Summ. J. Exs. I–Q, ECF No. 20-3 at 5–51.)

II

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where "a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252.

Reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). A court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III

Matero's discrimination, failure to accommodate and retaliation claims under the ADA are evaluated under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Specifically, Matero must first establish a *prima facie* case. If he does so, the burden shifts to Chipotle to articulate a legitimate nondiscriminatory reason for Matero's termination. The burden then shifts back to Matero to prove by a preponderance of the evidence that Chipotle's stated reason is a pretext for discrimination. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015).

### A

To establish a *prima facie* case of discrimination under the ADA, Matero must show he (1) has a disability within the meaning of the ADA, (2) is a "qualified individual" and (3) suffered an adverse employment action because of that disability.

*Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). Chipotle disputes the second and third elements.

An individual is qualified within the statute if he or she (1) "has the requisite skill, experience, education and other job-related requirements of the position" and (2) "with or without reasonable accommodation, can perform essential functions of that position." *Id.* Under this test, "the question of whether an employee possesses a subjective quality, such as leadership management or skill, is better left to the later stage of the *McDonnell Douglas* analysis." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990) (declining to treat subjective performance assessments as evidence that an employee is unqualified). Chipotle contends that Matero was not qualified because his "actual skills in properly training the restaurant teams . . . was [sic] never adequate"; he "failed miserably to implement [Chipotle's] policies," as reflected in his restaurants' food safety and cash handling audit scores; and he "continued to keep [low performing] employees employed." (Defs.' Mem. Supp. Summ. J., ECF No. 20 at 20–22.)

The record reflects that Matero could perform the essential functions of his position and was thus a "qualified individual." First of all, he was hired for the area manager job. He completed a months-long training program, and his only performance review labeled him a "reliable contributor." He then received a merit raise and bonus. Whether Matero ended up performing his job to Chipotle's satisfaction over time isn't the point; the record at the very minimum shows that he met the position's job-related requirements and could perform its essential functions.

To satisfy the third element of the *prima facie* case, an employee must show that his disability was a "determinative factor" in the decision to terminate. *Watson v. Se.*

*Penn. Transp. Auth.*, 207 F.3d 207, 214–15 (3d Cir. 2000). The employee must "raise[ ] an inference of discrimination," which is possible even if the record "contains credible evidence that could support a contrary theory." *Decker v. Alliant Techs., LLC*, 871 F. Supp. 2d 413 (E.D. Pa. 2012) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Numerous facts in the record raise an inference of discrimination. Anderson did not recall telling Matero that he was performing poorly before Matero left for surgery. (Anderson Dep. 108:14–17.) In fact, on October 3, 2016, Anderson sent Matero a copy of Matero's Mid-Year Progress and Goal-Setting Report with the message, "I know with you . . . focusing on these goals you can achieve them all." (Pl.'s Br. Opp. Summ. J. Ex. I, ECF No. 24-4 at 18.) Nyakundi testified that he visited Matero's restaurants while Matero was out and "uncover[ed]" "underlying issues" in the restaurants. (Nyakundi Dep. 124:22–24, 125:1–5.) At that point, again while Matero was absent, Nyakundi testified that "it just became apparent that we needed to let [Matero] go." (*Id.* at 4–5.) According to Anderson, Nyakundi did not discover some of the alleged grounds for Matero's termination until after Matero left work, while Anderson himself was on vacation. (Anderson Dep. 149:3–18.) Without ever discussing with Matero the concerns Nyakundi had with Matero's restaurants, the Dunston incident or Matero's alleged failure to report health code violations, Nyakundi fired Matero the day he returned from surgery with medical restrictions. (Nyakundi Dep. 166:10–13.) Nyakundi testified that he did not ask Matero to respond the allegations against him "[b]ecause Rob [Anderson] had had those conversations, and it sounded like Drew [Kellogg] was involved in it." (*Id.* at 166:14–19.) In sum, Nyakundi developed many of

7

the grounds for firing Matero while Matero was on medical leave without ever meeting his subordinate (much less giving him a chance to address Nyakundi's concerns) and without confirming that Anderson (who had previously supervised Matero and given him positive feedback and encouragement) ever warned Matero about his alleged performance issues.

In support of its decision to terminate Matero, Chipotle also relies on its allegation that he "called Ms. Dunston and asked her to come into work" before the three-day mandatory absence for ill employees. (Defs.' Resp. Pl.'s Interrog., ECF No. 24-6 at 15 ("During the phone call, [Matero] told Ms. Dunston . . . he was 'overwhelmed' and could not find a replacement."); Pl.'s Br. Opp. Summ. J. Ex. L, ECF No. 24-5 at 13.) Matero testified that neither Dunston nor anyone in the Exton restaurant told him Dunston threw up at work, and he does not recall Dunston's illness. (Matero Dep. 291:10–19.) The only evidence Chipotle offers to rebut Matero's testimony is the November 14, 2016 email from Nyakundi to Huichapa, Kellogg and Duffy stating that Matero "[k]nowingly allowed a GM to work after she reported throwing up, and did not ask her to report the issue." (ECF No. 20-3 at 55; Tr. Oral Arg. 12:21–24, 15:15–19.) Nyakundi never spoke with Dunston about the incident. (Nyakundi Dep. 192:17–21.) The first time Nyakundi talked to Matero was when Nyakundi listed the incident as one of the reasons for his termination. (Matero Dep. 313:2–11.)

In its position statement to the EEOC, Chipotle stated that the Dunston incident "[i]n particular . . . directly resulted in [Matero's] termination." (Pl.'s Br. Opp. Summ. J. Ex. L, ECF No. 24-5 at 13.) In its answers to interrogatories, Chipotle again stated that when Nyakundi discovered the Dunston incident, he decided to terminate Matero.

8

(Defs.' Resp. Pl.'s Interrog., ECF No. 24-6 at 15.) Anderson testified that in his opinion, the Dunston incident was the "final . . . straw" in the decision to terminate Matero. (Anderson Dep. 158:15–17.) However, Nyakundi testified that the Dunston incident was "an iota . . . a drop in the ocean of what I was seeing in terms of [Matero's] performance . . . it wasn't the driving factor" in the decision to terminate. (Nyakundi Dep. 149:19–24, 150:1–2.)

Dunston, who would seemingly have some helpful information, was never deposed and the record is silent with respect to her version of events. In sum, there are numerous issues for the jury to consider with respect to, among other things, Nyakundi's version of events, Matero's performance as an area manager and the role the Dunston incident played in his firing.

B

Matero has also established a *prima facie* case for his failure to accommodate claim. In addition to satisfying the elements for disability discrimination, Matero must identify "an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 284 (3d Cir. 2001). Chipotle then bears the burden to demonstrate that the proposed accommodation creates an "undue hardship." *Id.* Here, Chipotle disputes only the second and third elements of the *prima facie* case of disability discrimination, addressed above. *See supra* Section II.A. Matero accordingly survives summary judgment on his failure to accommodate claim.

C

To establish a *prima facie* case of retaliation under the ADA, Matero must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the protected activity and (3) a causal connection between the protected activity and the employer's adverse action. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003). "[T]emporal proximity between the protected activity and the termination can be itself sufficient to establish a causal link," but the proximity must be "unusually suggestive of retaliatory motive before a causal link will be inferred." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (quoting *Shellenberger*, 318 F.3d at 183, 189 n.9). Chipotle disputes the third element of this claim.

Chipotle argues only that the record fails to show a causal connection between Matero's leave for back surgery and his termination. It claims that Matero cannot rely on the temporal proximity between the two because one month passed between Matero's request for leave time and his firing. Matero argues that the temporal proximity between his termination and the date he returned to work with medical restrictions should be considered. The Court agrees. *See Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 587–88 (E.D. Pa. 2017) (measuring the proximity between the employee's last protected activity and his termination) (citing *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997); *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 332 (3d Cir. 2016)). Matero last engaged in protected activity on November 14, 2016, the day he returned to work after surgery and requested

accommodations. He was fired the same day; such proximity is enough to raise an inference of retaliation under the ADA. *See Reyer*, 243 F. Supp. 3d at 588.

Matero has accordingly established a *prima facie* case for his discrimination, failure to accommodate, and retaliation claims. Chipotle has put forth a legitimate nondiscriminatory reason for firing him, namely his alleged poor job performance. But largely for the reasons which satisfy Matero's *prima facie* case of discrimination, reasonable jurors could either disbelieve Chipotle's stated reason or believe discrimination and/or retaliation were more likely than not motivating or determinative causes of the termination.

IV

An FMLA discrimination claim requires proof of discriminatory intent, so the Court again applies the *McDonnell Douglas* burden shifting framework. *See supra* Section II; *Capps v. Mondelez Global*, 847 F.3d 144, 151 (3d Cir. 2017). The *McDonnell Douglas* analysis does not, however, apply to Matero's claim for FMLA interference because "[u]nlike an FMLA retaliation claim, '[a]n interference action is not about discrimination.'" *Id.* (quoting *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005)).

A

To establish a *prima facie* case of retaliation under the FMLA, Matero must show (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision and (3) the adverse decision was causally related to his leave. *Lichtenstein v. Univ. Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012);

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). Chipotle disputes the first and third elements.

Chipotle contends Matero never requested FMLA leave. Matero argues that his request for time off for surgery and recovery was enough to put Chipotle on notice of his need for protected medical leave. Matero is correct that an employee need not mention the FMLA by name to invoke the right to leave; "the critical question is how the information conveyed to the employer is reasonably interpreted." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007); *see also Lichtenstein*, 691 F.3d at 305 ("[I]f an employee's initial notice reasonably apprises the employer that FMLA may apply, it is the employer's burden to request additional information if necessary.")

Here, Matero told Anderson "sometime in late September/early October" that he needed back surgery. (Anderson Dep. 120:11–22.) Anderson testified that he knew Matero had a "serious medical impairment" and that Matero "needed to go on a leave of absence as a result of the medical impairment." (Anderson Dep. 122:7–13.) Nyakundi testified that he believed Matero's absence would be covered by the FMLA. (Nyakundi Dep. 98:2–10.)

The third element of the FMLA retaliation claim parallels the third element of Matero's ADA retaliation claim. Matero must provide evidence "sufficient to create an inference that a causative link exists between [his] FMLA leave and [his] termination." *Lichtenstein*, 691 F.3d at 307. Again, "unduly suggestive" temporal proximity between protected activity and termination "is sufficient standing alone to . . . defeat summary judgment." *Id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217,

232 (3d Cir. 2007)). The Court denies summary judgment on the FMLA retaliation claim for the reasons outlined in Section II.A.

B

To establish an FMLA interference claim, Matero must show (1) he was an eligible employee under the FMLA, (2) Chipotle was an employer subject to the FMLA's requirements, (3) he was entitled to FMLA leave, (4) he gave Chipotle notice of his intention to take FMLA leave and (5) he was denied benefits to which he was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014). Interference includes "not only refusing to authorize FMLA leave, but *discouraging* an employee from using such leave." *Fraternal Order of Police v. City of Camden*, 842 F.3d 231, 245 (3d Cir. 2016) (quoting 29 C.F.R. § 825.220(b)) (emphasis in original). Chipotle disputes the fourth and fifth elements.

As outlined above, a reasonable jury could find that Matero notified Chipotle that he intended to take FMLA leave. With respect to the fifth element, Matero testified he was "directed [not to apply for FMLA leave] by Rob Anderson." (Matero Dep. 277:14) Specifically, Matero claims that he asked Anderson whether he "need[ed] to go through a leave of absence" for surgery, and Anderson responded that using sick and/or vacation time "would be the path of least resistance, that would be the easiest thing for [Matero] to do." (*Id.* at 277:16–24, 278:1–4.) For his part, Anderson denies saying this. He testified instead that he told Matero to contact Chipotle's benefits team when Matero inquired about taking time off. (Anderson Dep. 123:1–24, 124:1–14.) The jury can decide who to believe.

13

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.